ESTHER A. LAWRENCE v. THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY.

No. 9113.

CONTRIBUTORY NEGLIGENCE — *on facts as to, disclosed by record, judgment on general verdict for railroad company affirmed.* In case of a personal injury by a collision with a locomotive engine and train at a highway crossing, where the answers of the jury to particular questions of fact show contributory negligence on the part of the plaintiff, and the general verdict is for the defendant, and only a part of the evidence is preserved, and no material error appears in the instructions, and the court overrules the plaintiff's motion for a new trial and renders judgment on the verdict, *held* that such judgment should be affirmed although the defendant may not have been free from fault.

*Error from Franklin District Court.*
*Hon. A. W. Benson, Judge.*

AFFIRMED.                    OPINION FILED JANUARY 8, 1897.

*J. W. Deford* and *H. P. Welsh,* for plaintiff in error.

*A. A. Hurd, W. Littlefield* and *O. J. Wood,* for defendant in error.

MARTIN, C. J.    This was a suit brought to recover $25,000 damages for personal injuries sustained by the plaintiff August 19, 1892, about 6 o'clock P. M. at a crossing of the defendant's Emporia Branch Railroad, about one-half mile south of Pomona, in Franklin County. A verdict was returned and judgment was rendered in favor of the defendant, January 19, 1893, and, the plaintiff's motion for a new trial being overruled, the plaintiff brings the case here alleging error.

The record does not contain all the evidence, sufficient being preserved, however, to show the applicability of the instructions given. From this and the answers of the jury to particular questions submitted

to them, the material facts appear to be as follows :
The plaintiff and her sister-in-law, Lennie F. Law-
rence, were driving north upon the highway in a two-
horse, single-seated, top carriage, the side curtains
being up or off.   The plaintiff was on the right hand
or east side driving the horses.   The railroad crosses
the highway east and west almost at right angles,
bearing slightly to the north in going east.   To the
west the track is straight to the Marais des Cygnes
River, a mile and a half distant.   The railroad em-
bankment is 4 to 6 feet in height.   The depot for
Pomona station is 192 feet west of the highway cross-
ing on the north side of the main track.   The cattle-
chute and pens are 302 feet west of the crossing and
on the south side of the passing track, which starts
out from the south side of the main track 2,057 feet
west of the crossing and extends a considerable dis-
tance east thereof.   The section house is 2,083 feet
west of the crossing.   There is a stub switch starting
from the north side of the main track 725 feet west of
the crossing and extending on the north side of the
depot and across the highway.   The distance between
the passing track and the main track from center
to center is 16 feet, and from the center of the main
track to the north end of the stock-chute 21 feet and
.10 inches.   This structure extends 80 feet south to
the stock-pens built of boards and posts about 6 feet
high ; the chute being of the same height for the
first 40 feet, and from that point northward sloping
upward to correspond with the railroad embankment,
thus raising its northern extremity to a point $9\frac{7}{10}$
feet above the south rail.   South and west of the
stock-pens and chute were growing corn and some
weeds.   There is a hedge fence on the west side of
the highway, but it extends north only to a point 372

feet south of the railroad crossing. The ladies were driving at a trot. They saw a hand-car coming from the east and crossing the highway, and they made some remarks to the effect that the train could not be very near as the hand-car was on the main track. They drove to a point within 15 feet of the crossing, when they saw the fast freight train approaching from the west and not far away. They were frightened, and Lennie F. Lawrence struck one of the horses with the whip, and they sprang forward onto the track, when the train came upon them. Mrs. Lawrence was killed, as also one of the horses, and the plaintiff sustained very serious and perhaps permanent injuries. The station whistle, which was quite prolonged, was sounded about 4,500 feet west of the crossing but the ladies did not hear it, there being a slight breeze from the east. When the engine was about 2,000 feet west of the crossing, the engineer saw the team and vehicle about 250 to 300 feet south of it. The findings are not entirely satisfactory as to the point where the crossing whistle was sounded. There was no whistling post there, and in answer to one question the jury found that the whistle was blown 1,200 or 1,300 feet from the crossing, but in answer to another they stated that it was sounded about one-third of the distance from the stock-chute to the section house, which would be about 896 feet from the crossing. The bell was rung from about the end of the stub switch, and the plaintiff testified that they heard the ringing of the bell and the whistle almost simultaneously and this was her first knowledge of the approach of the train. The engineer endeavored to stop, but the engine had gone 20 or 30 car lengths beyond the crossing before he succeeded in stopping. The grade was slightly descending going east. The jury found that

at a point 30 to 31 feet south of the crossing the ladies could have seen to the stub switch, and at a point 27 feet south to the section house ; that after passing the north end of the hedge they could have seen the train to the bridge, a mile and a half away, and could have seen the smokestack and the top of the engine and cars over the stock-pens and the cattle-chute, or by looking between the bars. The plaintiff had crossed the track very frequently. The speed of the train was about 30 miles an hour. The day was clear and the sun shone brightly.

It seems strange that this disaster should have occurred, and the jury must have believed that in driving upon the crossing under such circumstances the ladies did not exercise ordinary care. The train must have been in plain view from the time that the ladies passed the north end of the hedge ; yet when they first saw it, and Mrs. Lawrence struck the horses with the whip, it could not have been more than 200 feet distant. The case is somewhat like that of *Young v. C. R. I. & P. Rly. Co., ante* p. 144 (45 Pac. Rep. 583), where a demurrer to the plaintiff's evidence was sustained by the trial court and the judgment was affirmed by this Court.

Complaint is made as to several instructions given. We have carefully considered each but find no material error in the instructions, especially in view of the facts found by the jury.

The judgment must be affirmed.

All the Justices concurring.